We understand that we're privileged to have in attendance some law students from Emory, and we welcome you. What you're going to witness is a conversation between lawyers and judges. That's what the purpose of oral argument is, is to have a conversation and try to get to the bottom of these cases. And so the lawyer's duty is to help us write an opinion in a way, their way, of course. With that, we'll begin with the United States v. Todd, Ms. Palmer. Your Honor, good morning, and may it please the Court as well as counsel for the government. Mr. Todd's conviction was flawed by the admission of about a 20-year-old conviction for tax fraud. Not only was the jury told that he had previously been convicted of a tax fraud offense, but the government went further. The case agent read from an unverified document and admitted into evidence. The government characterized that document as providing Mr. Todd's description for how his prior fraud scheme worked to a congressional subcommittee. And there were some damning statements in that exhibit. For example, when Mr. Todd told the committee he thought his odds of actually getting caught were small and that he was not afraid of his scheme being detected by law enforcement. Now, you say it wasn't that the statement that he gave, that it wasn't verified. And I think I know what you mean, but it was certified, right? It was an authentic document, at least insofar as admissibility purposes were concerned. Your argument's a little bit different, I take it, and that is that there was no verification that what was in the document was accurate. Correct, Your Honor. And I think at the trial level, you know, reflecting, I probably unartfully used the word authentication when I made my objection at the bench. But yes, my objection is not that I think the document was faked or forged in some way, but that there was no verification that what the contents of the document were accurate. I recognize that it contained a certification from the Library of Congress. And that certification, which was included with the government's exhibit, contains language that says, this is to certify that the Library of Congress contains a publication, and then it listed out the title, and that the attached photocopies are a true representation from the work. So really what the document was was not Mr. Todd's statement. It was actually whoever created that document, and we don't know who it is. It was really their statement saying, here's what Mr. Todd said to the congressional subcommittee. So that was the focus of my objection at trial. Well, where is whoever it is that made this document? And there was nothing within the document to indicate how the recordation was made. We don't know if the testimony before the committee was audio recorded and later transcribed, or if there was a court reporter there taking down the testimony. There's just no indication from the document at all. How is that different from courts looking at legislative materials to figure out the meaning of a statute and looking at what was said on the Senate floor or the House floor on a given day or what a witness said at a subcommittee hearing? When you say courts looking at that, are you talking still about in the trial context? Because that, to me, seems like what the difference would be. I mean, we're talking about a document that got admitted and read to the jury, and that's the – No, my argument was – my question was not so much a technical legal one, but the concept of looking at those materials and sort of assuming that what is in a certified document at the Library of Congress or the Senate or the House is what it purports to be. I have to say I haven't thought about that particular angle. You know, when I was analyzing the argument, I was trying to think of more analogies, like the one I put in my brief, you know, when the government seeks to introduce taped recordings that an officer has made or using an undercover informant. But, you know, to some extent, when we go back and we look at, you know, House bills or legislative materials, you know, part of it relies on, you know, where you go get the document from. There's something in the document that says, okay, this is a House bill. You know, this is the procedural history. So I get your point, but I have looked at it a little bit differently because we are talking about, you know, a document that has to follow the rules of evidence before it can be read to the jury or published to the jury. And this document, not only was it read from during the trial, but it did go back with the jury during their deliberations as an exhibit. So it was something that they were able to refer to and read from and analyze later. Well, you know, wasn't Judge Jordan asking you? Judges often rely on a record of this is the legislative history. Here are floor statements that were made during the bill's consideration. Isn't that the kind of document this was? I mean, yes. Admittedly, my argument is not that I think this document was, you know, false or forged in some way. And that wasn't what I argued down at the trial court level. Your concern is it came in for the truth of the contents. Right. That's right, Your Honor. So I appreciate the point you're making, and I'm not disputing or trying to argue to this panel that, you know, that I think this document was faked and somehow smuggled into the Library of Congress. We understand your point on that, and you have some other points to make. Yes. Thank you, Your Honor. This court has repeatedly said, going back to just the concept of a prior conviction coming into evidence at all, this court has repeatedly said that prior crime evidence has significant potential for prejudicial effect and should not be employed unless really necessary. And in the government's brief, they seem to argue with regards to this conviction a little bit in both ways. You know, in one respect, they say, well, the other evidence in this case was overwhelming, so even if this came in erroneously, it didn't harm Mr. Todd. But at the same point, the government's brief points out just how problematic this exhibit was. This exhibit really put flesh on the bones of Mr. Todd's decades-old tax fraud conviction. It was used to tell the jury how he previously recruited clients, how he concealed his activity, and the value he put on targeting poor members of the community, particularly women. So admittedly, I recognize there's no bright-line rule that this court has set forth for saying, well, once a conviction reaches a certain number of years old, then it's too old to be admitted. But there are two prior cases, and the government cited to one in their brief from this circuit. One is United States versus, I'm not sure if it's Perrier or Perrier, how the water is pronounced. But that was an unpublished opinion from 2015. I think maybe, Judge Jordan, if I'm remembering correctly, that was your opinion, where this court found that a prior conviction for a felon in possession of a firearm was too remote in time to be admitted at the current trial. And I think the time discrepancy in that case was approximately the same as what we're facing here in Mr. Todd's case. And then there's also the case of United States versus Sanders, which was a 2012 decision. And in that case, this court said a 22-year-old conviction for possession of marijuana was too remote in time to be considered for the defendant's current charges of a cocaine conspiracy. So I would argue that Mr. Todd's conviction in this case falls in line with those two cases and should have been excluded at the trial court level. The district court apparently believed that despite the length of time that had elapsed, the conviction should have been admitted because in a district court's view, the schemes were so similar. I believe that's what Judge Cohen said in ruling that the evidence should come in. That's right. So this court has said two things. One is that the older a conviction gets, the less probative value it has. But at the same time, when a prior conviction is more similar to a current conviction, then it's got much more potential for an unfairly prejudicial effect. So that's the part I would focus my argument on. And just with my remaining minute or so, I just want to briefly touch on the issues of loss and restitution. I recognize that with regards to restitution, I didn't object at the trial court level. So the court's review at this point is fairly limited, and I think the court heard extensively on the restitution yesterday and the related case of Ms. Sheffield. So I won't expand on that. But with regards to the issue of loss, it is true that loss can be an estimation and doesn't have to be proven with precision. But in this case, there was reliable and specific data available to the government. And the facts of this case are not like the facts of the cases cited in the government's brief, where the information the trial court had to estimate the loss amount was really either not there or just very hard to calculate data. Of course, the issue also is intended loss. That's right, Your Honor. Which goes beyond the actual loss. Yes. I think in this case... Driving the guideline range, sentence range, as opposed to restitution. Yes, exactly, Your Honor. I do think, though, in this case, intended loss and actual loss were the same. You know, the amount of refunds claimed on the tax returns was the same as the amount that the IRS actually paid out. But there were some line items, although they might not have made a difference to your argument. There were some line items in that spreadsheet where nothing was paid. Right? There were some taxpayers listed where no money came back from the IRS. So maybe, at least in theory, the intended loss might be higher than the actual loss. I think maybe that's true in a few circumstances. But by and large, I believe the amount claimed was paid out by the IRS. Thank you. Ms. Brown. May it please the Court. Lindsay Barron for the United States. Appellant Fraser Todd, a tax preparer by trade, is a serial fraudster who spent the better part of 25 years hustling a scheme to maximize his client's tax refund. And he used different tools at different points in time over that 25-year period. But the goal was always the same, to get them as high a refund as he could by claiming tax refunds, tax credits that they were not entitled to. And I really can't state it any better than the appellant does in his brief, which is that he is, and I'm quoting here, good at preparing taxes and helping his clients maximize their refunds. That's the issue. But the problem for him is that he maximized those refunds by manipulating credits that he knew his clients were not entitled to. And so the scheme charged was this education scheme, and it was a conspiracy between the defendant and his two co-conspirators. But the problem for the government is that the defendant forecasted that his theory of the case was going to be a mere presence theory. He was going to argue, I was in the same office, I was there with these women, but I really didn't know what they were doing. It was all them. And so by doing that, it's not just that he pled guilty that put his intent in question, it's that he specifically said he didn't know what was going on. And so the government needed to walk the jury back in time and explain to them that what was happening in that office was a page out of the Fraser Todd playbook and something that he had been doing for years. And so that's why we wanted to introduce the conviction, not just because intent was at issue, although that is one of the issues. But in a fraud scheme. But now you say the conviction doesn't really matter. Well, so there's the tension, right? I mean, on the one hand, in order to show harmless error, we have to prove that there was other evidence supporting the conviction. But it matters for this reason. That's what the government is always arguing in these cases. They argue at the district court that they desperately need the 404B evidence, that they can't get to a jury without it. And then on appeal, when there's argument about the 404B evidence having been improperly admitted, the government says, oh, we really didn't need it. We could have succeeded without it, and so it's harmless error. Well, and, Your Honor, I'm not aware of a single case that says that the government has to prove that its case rises and falls on the 404B. I think the question in Jernigan is the government has to demonstrate its need for it. So there has to be a need. And when you're dealing with an old conviction, I think the need does have to be higher. I think the probative value has to be higher. And this is why in this case, so all the other cases that I think both sides cited to, Jernigan, James, Perrier, and a lot of the cases dealing with 404B, you're looking at someone who may be charged with a drug crime or charged with a gun crime, and the prior conviction is basically just a conviction for that same thing. And so you really don't see much in terms of similarity other than they did it before so they did it again. But fraud cases are different for this reason. In a fraud scheme, you're looking at a machine, and there are cogs and there are wheels. And what the government tried to do was break apart those cogs and wheels and show the jury that, look, it's not just that he committed a tax crime before. It's that he committed tax crimes in the same way. And those specific similarities and why that congressional testimony was probative is because he told Congress, and there was evidence at trial showing that it was similar in this case, that the way that he chose his victims is not the right word, clients, taxpayers. The way that he would hire recruiters to go out, he would pay them $50 apiece to go out and find people and bring them into the scheme. The way that he would use electronic filing numbers that belonged to other people, EFIN is the acronym that the IRS uses. He would use EFINs of other people to file these returns online so that the IRS couldn't trace it back to Frazier Todd because he was a convicted felon. And so Brian Jacobs testified at trial that Frazier Todd stole his EFIN to file electronic returns. And so that was another similarity. So why did the government need this? A, because Frazier Todd was arguing that he was just there and wasn't really involved. And that was a real problem for us because his name was on very few of the tax returns that were filed as part of the conspiracy. He didn't use his name to file these tax returns. But the second problem for the government is that most of the people who worked in that office dealt primarily with Ms. Sheffield and Ms. Walker. They didn't deal with Mr. Todd much. He was not involved in the running of the business day to day. He was more in the background. He was the idea man. He taught both of the co-defendants how to prepare taxes. And so we proved that by introducing testimony from Cozy Walker, the co-defendant. But she was a co-defendant. She had pled guilty. She had the same impairment that a lot of co-defendants do, which is that she, the defense pointed out that she had an incentive to cooperate with the government. And so what this conviction allowed us to do was corroborate her testimony that he's the guy with the plan. He's the guy who knows how to identify these tax credits that he can use to maximize taxpayer refunds. He's the guy who taught them about how to select clients who otherwise wouldn't have a tax burden so that you guarantee that all that money is going to come back and is not going to be intercepted by the IRS or by child support or something else. And so that conviction, it's not just that he had committed tax fraud. The way that he did it allowed us to argue to the jury that he was still behind the scenes, that this was his fingerprint. And it had his name all over it. How is the document about the congressional testimony admissible? Your Honor, the objection that was raised at trial was authentication. And so we introduced a certified public record. It had the gold seal. It was introduced to prove the contents of the statements in there, which somebody else recorded his statements. So there was not a hearsay objection raised. But what exactly was the, I haven't read the transcript, what was the exact objection? The objection that was raised at trial was authentication. Nothing about the contents. Ms. Palmer did say that there was no certification from a court reporter. But there was not a hearsay objection. If there had been, I would have said that, you know, it's a statement by an opposing party. It's an admission by the defendant. But you don't have the party that made this, received the admission. You don't have the person who actually. And that's correct, Your Honor. And Ms. Palmer said something in her argument. I think this may not be 100 percent accurate. But she said she's looking at when she's analyzing why this document is objectionable, she's looking at the fact that it has to follow the rules of evidence. And so that's the question I asked the court to look at. What rule of evidence has she identified that says that there has to be a court reporter's certification before a document comes in? She cites Richardson in her case, which is the case dealing with an undercover tape recorder and how do you certify that the transcript is an accurate recording. And this court has a preferred practice. That's the term it uses in Richardson. But the Richardson case, the government had a problem that I don't have. I had a certified public record. There's no rule of evidence and no case that has been cited by the defendant saying that the government, in addition to having a certified public record, also has to have a court reporter's certification that it's accurately transcribed. Well, that takes care of the authentication problem. It doesn't take care of the hearsay issue. And I know you say there was no hearsay objection, but it doesn't take care of the hearsay issue. It's plainly hearsay. If I were the trial judge, I would have excluded it, no matter how much authentication you had. And respectfully, Your Honor, under abuse of discretion, the question for this court is not what it would have done in the district court. It would have been plain error in my judgment. Well, so, Your Honor, there's a residual exception under the hearsay rule. If there are other indicia of reliability and had this issue come up in trial, this would have been my response. There's no live witness who's going to testify to the indicia of reliability. No, Your Honor. I just think the government took a chance. That's correct, Your Honor. You offered it, and the hearsay objection wasn't made, and so you got it in. It wasn't. And if it had been made, Your Honor, I would have said that there is this residual exception to the hearsay rule. And here we have testimony that is given before Congress. You could have shown that he appeared before Congress, for whatever relevance that would be. But what he supposedly said is another matter. Well, and I understand, and respectfully, Your Honor, I know that everyone on the panel either currently is or has been a district court judge, and in Judge Cohen's shoes, may have made a different call. But the question under Jernigan is whether the call that Judge Cohen made was unsupportable. Your advantage is the objection didn't go to hearsay. Well, so we review for plain error at this point, and the question on plain error under Dortch is whether there is an Eleventh Circuit published case on point that says that what the district court did was . . . Uh-oh, there are textbooks a mile long that it's hearsay. Flat-out hearsay and nothing about reliability. I think you're biting off more than you want to chew. Okay, Your Honor. So, I would like to address another issue that was raised by the defendant, which is the balance when dealing with the age of the conviction. So, at the time of trial, the conviction was old. It was 20 years old. But I want the court to look at from the time of the conduct in the conviction to the earliest conduct in this case, and it's less than 20 years. So, that conviction was from 1992. It was from a fraud scheme that was discovered in 91. So, that's our first point in the timeline. Count two of the indictment, which was the one that alleged the fuel tax credit in the false W-2 scheme, the first filed tax return in that scheme was 2007. So, we're actually looking at a time span of 16 years, and that's . . . How much time was he in prison? I believe it was three years. I know he was sentenced to three years. I don't know how much he actually served. I assume he got good time credit. But you needed the congressional testimony to make the link of why the conviction itself was probative. Because, as you said in the beginning of your argument, if all you had was the fact that he did something similar in the past, that wouldn't be enough. Well, it could be enough. I mean, if we look at, for example, in James . . . I thought you said that in the cases that were cited, it's just that somebody did something similar in the past, and that's not enough. Well . . . You needed that congressional testimony, right? This Court has not said that's not enough. That's not my question to you. I'm sorry. You needed that congressional testimony to make a stronger argument about the relevancy of the conviction. No question. You would have been in a much tougher place in an evidentiary sense if you did not have the congressional testimony, and all you had was a naked conviction . . . Absolutely. . . . for the same type of conduct. No question at all, sir. But, even then, even in Madison's situation, it's still not clear that it should not have come in. So, if we look at James, I believe the conviction in James was 15 years old. It comes in. In Perrier, it's 22 years. It doesn't come in. So, does a conviction that's 16 years old, does it come in or not? It's not 16 years old. It's the time of admission that counts, right? Has any court ever said that you start counting the time backwards from when the crime was actually being committed? I truly don't know the answer to that, Your Honor, of whether there is a case where it says that you only look at crime to crime. If we look at conviction to conviction, it's 1992 to 2016 was when this trial was. Yeah, which is more than . . . So, it's actually 22 years. . . . more than 20. Right. And so, another issue in Perrier, though, that distinguishes that case from this, is that in Perrier, the original conviction, and this was pointed out in the decision, was committed when the defendant was 20 years old. And so, that was a factor. So, it's not just that it was old. It's that he was 20 years old when it was committed. Whereas, the 1992 conviction, Mr. Todd was in his 40s and had been a tax preparer for a long time at that point. And so, that's another distinguishing factor for Perrier. I absolutely agree that it's the congressional testimony that allows us to ask the jury to draw the inference that Fraser Todd is the man behind the curtain. If there are no more questions on the conviction itself, I would like to address the issue of loss. Yeah. Do you think the same standard applies for the enhancement calculation as well as the restitution calculation? Do you mean standard of review? No, no, no, no. How to reach the figure. They're different, Your Honor. I mean, this circuit has been clear, and I think every circuit has been clear that restitution is based on actual loss. And in this case, well, in any case, the loss amount can be based on intended loss. But I want to point out that the issue that has been raised by the defendant, which is that it's just an estimate, that was not raised below. The only issue that was raised below was when do we start his presence and his ending time in the conspiracy. The government argued that all tax returns filed before May 25, 2012, should be included. The defendant argued that we should stop at May 2, 2012, and that's in the first few pages of the transcript. And that was the only issue that was debated at the sentencing hearing. So I ask this Court to review for plain error. You may prevail in this case because of those reasons, but that sentencing hearing was conducted in a very sloppy way. We heard argument, was it yesterday, in the co-defendant's case? And there are entries on that spreadsheet that are duplicates. For restitution. For the same year. No, it's the same thing for loss. Restitution and loss are certainly not the same. But they can overlap. And you can count the loss for restitution purposes. There are taxpayers on that spreadsheet who have duplicate entries. The AUSA who was here yesterday, and I forget her name. That was me. Oh, that was you. I'm sorry. It's been a long week. There were duplicate entries there, I think, as you recognized. Right. And, Your Honor, that doesn't change actual loss. And this is in the record here. Agent Lauren Neal testified that that spreadsheet was pulled. That was every single tax return filed out of that business. And that business did file more than one tax return for individual taxpayers. For the same year. For the same year. Now, the IRS didn't always pay twice. I thought you told us yesterday that there were duplicates that could not be explained, 31 of them. For restitution purposes, that's true. Loss, too. No, Your Honor. Respectfully, for intended loss, our argument is that every time. No, no, no. I'm talking actual. I understand the argument about intended. Right. No, for actual loss, you're absolutely right. It should not be double counted. You're just saying that because the tax return was prepared and submitted, the intent was to grab that amount of money. And that should be counted for loss purposes. Yes, Your Honor. I think you're right about that. And if there are no more questions. I think we understand your position. Thank you, Your Honor. Ms. Palmer. Ms. Palmer. I would like to be brief and touch very briefly on the question of 404B. And Judge Jordan, to what you said, you know, that's the frustration with 404B a lot of times is if we don't win down at the trial level, that's basically it. Even though we can talk about it on appeal, you know, just generally that's not a successful argument on appeal. But in this case, as Ms. Barron said, the prior conviction was used to corroborate Ms. Walker's testimony who was a co-defendant who had pled and was in cooperating. Ms. Walker, there was a lot of impeachment evidence that we presented with regards to her. Not only her bias and her interest in pleasing the government, but some other prior false statements that she had made to a different organization. So I would argue that's why, that's part of the reason why this prior conviction was so important to the government's case. Because without it, without that corroboration, it may have been that the jury chose to disbelieve her. And Ms. Walker was the one who argued for the, or provided testimony that the government used to argue that Mr. Todd was, you know, linked in with all the returns that had been filed by the diverse business. So I don't have any additional argument I want to add. Thank you very much. Thank you. You were court appointed and we appreciate your having taken the assignment. Thank you. The next case is Johnson v. Rescare, Georgia.